UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| KELLY JOE CAMPBELL, <br><br> Plaintiff, <br><br> vs. <br><br> ERIC WHITCHER, DIRECTOR, PENNINGTON COUNTY PUBLIC DEFENDER'S OFFICE, in his individual and official capacity; MRS. LAWLER, ASSISTANT DIRECTOR, PENNINGTON COUNTY PUBLIC DEFENDER'S OFFICE, in her individual and official capacity; and MR. LAPP, LAW OFFICE MANAGER, PENNINGTON COUNTY PUBLIC DEFENDER'S OFFICE, in his individual and official capacity, <br><br> Defendants. | 5:24-CV-05039-KES <br><br><br> ORDER DENYING DEFENDANTS' MOTION TO DISMISS |

Plaintiff, Kelly Joe Campbell, commenced a pro se civil rights lawsuit under 42 U.S.C. § 1983 alleging that a policy decision by the Pennington County public defender's office not to represent criminal defendants at their initial bond hearings violates his constitutional rights. Docket 1. The court granted Campbell's motion for leave to proceed in forma pauperis and screened his complaint, dismissing it in part and directing service in part. Docket 10. The defendants who remain after screening, Eric Whitcher, director of the Pennington County public defender's office; Mrs. Lawler, assistant director of the Pennington County public defender's office; and Mr. Lapp, law office

manager of the Pennington County public defender's office, move to dismiss Campbell's complaint for failure to state a claim upon which relief can be granted. Docket 15. Defendants also contend that they are entitled to qualified immunity. *Id.*

## I.     Campbell's Factual Allegations

The court considers the following allegations taken from Campbell's complaint as true when considering defendants' motion to dismiss.

Early in 2024, the Pennington County public defender's office enacted a policy of not representing criminal defendants at their initial appearances or at their initial bond hearings. Docket 1 at 4. Campbell was a defendant in a state criminal case commenced in Pennington County. *Id.* During his initial appearance, which included a bond hearing, Campbell was not represented by the Pennington County public defender's office because of the policy he now challenges. *Id.* Campbell contends that because he was not represented by counsel during the bond hearing, "[t]he result was the imposition of a bond 25 times what [he] could afford[.]" *Id.* (capitalization in original omitted).

Campbell names Eric Whitcher, Mrs. Lawler, and Mr. Lapp as defendants and sues them in their individual and official capacities for damages. *Id.* at 3, 5. Whitcher is the director of the Pennington County public defender's office. *Id.* at 5. Mrs. Lawler is the assistant director, and Mr. Lapp is the law office manager at the Pennington County public defender's office. *Id.*

Defendants request that the court take judicial notice of Campbell's underlying criminal proceedings in Pennington County case number 51CRI24-

000531. Docket 16 at 2. When considering a Rule 12(b)(6) motion, a court may take judicial notice of its own records and files as well as other matters of public record. *United States v. Jackson*, 640 F.2d 614, 617 (8th Cir. 1981); *see also Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records"); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss." (citation omitted)). In accordance with defendants' request, the court takes judicial notice of Campbell's criminal record, 51CRI24-000531.

On February 5, 2024, Campbell was arrested for possession of a controlled substance, aggravated eluding, failure to stop after an accident causing property damage, and reckless driving. Docket 17-1 at 1–2. His initial appearance was held on February 6, 2024, and the magistrate judge set his cash bond at $5,000 dollars. *Id.* at 4. On February 6, 2024, Campbell signed an application for court-appointed counsel, Docket 17-2, which was docketed on February 9, 2024, Docket 17-1 at 2. Campbell's motion for court-appointed counsel was granted on February 8, 2024, Docket 17-3, but not docketed until February 9, 2024, Docket 17-1 at 2. On September 13, 2024, Campbell pleaded guilty to aggravated eluding, and the remaining charges were dismissed. Docket 17-1 at 1–2. Campbell was sentenced to two years imprisonment in the state penitentiary with six months suspended and credit for 220 days served. *Id.* at 1.

## II.    Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989). When considering a Rule 12(b)(6) motion, the facts alleged in the complaint must be considered true, and all inferences must be drawn in favor of Campbell, the nonmoving party. *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (citing *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 464 (8th Cir. 2002)). To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet the plausibility standard, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). But "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' . . . a claim must be dismissed[.]" *Neitzke*, 490 U.S at 327 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## III.    Discussion and Analysis

### A.    Sixth Amendment Right to Counsel

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The United States Supreme Court "has held that the right to counsel guaranteed by the Sixth Amendment applies at the

4

first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery v. Gilliepsie Cnty.*, 554 U.S. 191, 194 (2008). Stated differently, "a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." *Id.* at 213. Once the right to counsel attaches, the "Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (quoting *United States v. Wade*, 388 U.S. 218, 227–28 (1967)); *see also United States v. Lewis*, 483 F.3d 871, 873 (8th Cir. 2007) ("The right to counsel under the Sixth Amendment applies only to 'critical stages' of the proceedings against the defendant." (citing *Wade*, 388 U.S. at 224–25)).

According to the state court docket sheet, Campbell had an initial appearance before Magistrate Judge Scott Bogue on February 6, 2024. Docket 17-1 at 4. An application for court-appointed counsel was docketed on February 9, 2024. *Id.* at 2. An order appointing counsel was signed on February 8, 2024, and filed the next day. Docket 17-3. A preliminary hearing was conducted on February 21, 2024. Docket 17-1 at 4. And Campbell was arraigned on March 8, 2024. *Id.*

During Campbell's initial appearance, the magistrate judge set a cash bond of $5,000. Docket 17-1 at 4. Campbell alleges that he was not represented by counsel during the initial appearance when his initial cash

bond was set because the Pennington County public defender's office has a policy of not representing criminal defendants at initial appearances and bond hearings. Docket 1 at 4. If the initial appearance or determination of bail are "critical stages," then Campbell has plausibly alleged that the challenged policy, as applied to him, violates his Sixth Amendment right to counsel. According to defendants, "[n]either the United States Supreme Court nor the Eighth Circuit have directly reached the question of whether the determination of bail at the initial appearance is a 'critical stage'." Docket 16 at 6.

### B.    Qualified Immunity

The court first considers defendants' argument that they are entitled to qualified immunity. "Qualified immunity shields a government official from liability unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "should be decided by the court long before trial[]" and "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* at 899 (citation omitted). This protection "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.' " *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

To determine whether a government official is entitled to qualified immunity, courts must decide (1) "whether the facts that a plaintiff has shown make out a violation of a constitutional right" and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Est. of Nash v. Folsom*, 92 F.4th 746, 754 (8th Cir. 2024) (citation modified). "If either question is answered in the negative, the public official is entitled to qualified immunity." *Vaughn v. Ruoff*, 253 F.3d 1124, 1128 (8th Cir. 2001). A court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989) (internal quotation omitted). In other words, a constitutional right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The Eighth Circuit does "not define clearly established law at a high level of generality." *Goffin v. Ashcraft*, 977 F.3d 687, 691 (8th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)).

To refute defendants' qualified immunity argument, Campbell must identify "either controlling authority or a robust consensus of cases of

persuasive authority that placed the statutory or constitutional question beyond debate at the time of the alleged violation." *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019) (en banc) (citation modified). Here, based on existing precedent, the Supreme Court has recognized a Sixth Amendment right to court-appointed counsel that attaches when a prosecution is commenced. *Rothgery*, 554 U.S. at 198. The Court "pegged commencement to the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* (citation modified). And the Court further acknowledged that "the right to counsel attaches at the initial appearance before a judicial officer," which is "generally the hearing at which the magistrate informs the defendant of the charge in the complaint, and of various rights in further proceedings" and "determine[s] the conditions for pretrial release." *Id.* at 199 (citation modified).

Here, Campbell was arrested based on a complaint. Docket 17-1 at 2. He was taken before a magistrate judge pursuant to SDCL § 23A-4-1. He was afforded an initial appearance, which under SDCL § 23A-4-3, should have resulted in the magistrate judge informing him of the complaint's allegations, his right to retain counsel and to request counsel if he is unable to obtain counsel, of the circumstances that would allow him to secure pretrial release, that he is not required to make a statement, and that any statement made by him can be used against him in the future. *See* SDCL § 23A-4-3. Campbell alleges in his complaint that bond was set at this hearing. Docket 1 at 4. It appears from Campbell's complaint and the official public record of the hearing

8

that it was an initial appearance similar to the initial appearance referenced in *Rothgery*, in which the Supreme Court found that the right to counsel attached. *Rothgery*, 554 U.S. at 199.

Defendants concede that Campbell's Sixth Amendment right to counsel attached during the February 6, 2024, initial appearance. Docket 16 at 5–6. Defendants then contend that Campbell's initial appearance "combine[d] the Fourth Amendment's required probable-cause determination with the setting of bail," neither of which, according to defendants, are critical stages at which counsel is required. *Id.* at 5–8 (alteration in original) (internal quotation omitted). It is not clear to the court why defendants contend that Campbell's initial appearance included a probable-cause determination. The state criminal docket indicates only that an initial appearance was scheduled on February 6, 2024. Docket 17-1 at 4. Under South Dakota law, probable-cause determinations when a defendant is charged with a felony are made during preliminary hearings. *See* SDCL §§ 23A-4-3, 23A-4-6. According to the state criminal docket, a preliminary hearing was held on February 21, 2024. Docket 17-1 at 4.

The court cannot conclude, based on the available record, that nothing that transpired during the February 6, 2024 appearance is a critical stage requiring counsel. Although the court, at defendants' request, took judicial notice of Campbell's state criminal court record, that record, Docket 17-1, provides no information regarding what transpired during the February 6, 2024 appearance. There is no transcript, minutes, or information other than

9

the fact that Campbell's initial appearance was scheduled on February 6, 2024, at 10:00 a.m. *Id.* at 4. If the state criminal record established that after Campbell's right to counsel attached during that appearance, nothing other than a bond hearing occurred, then defendants might be entitled to qualified immunity on the grounds that in February 2024 there was no clearly established right to counsel during a bond hearing. But defendants' qualified immunity argument asks the court to assume what happened during the February 6, 2024 initial appearance. *See* Docket 16 at 8–10. Because the record is incomplete, the court cannot conclude as a matter of law that nothing that transpired during the February 6, 2024 appearance is a critical stage requiring counsel. The defendants' motion to dismiss on the basis of qualified immunity is denied.

### C.    Official Capacity Claims

Campbell also sues defendants in their official capacities. Docket 1 at 3. A suit against a county official in his or her official capacity is considered a suit against the official's employer: Pennington County in this case. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). "Qualified immunity is not a defense available to governmental entities, but only to government employees sued in their individual capacity." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Defendants contend that the official capacity claims against them should be dismissed because the individual defendants did not violate Campbell's constitutional rights, Pennington County's allegedly unconstitutional policy was not the moving force

behind the alleged violation of Campbell's constitutional rights, and that Campbell's "guilty plea should be an absolute defense to his § 1983 claim that court-appointed counsel was not present at his initial appearance where a bond determination was made." Docket 16 at 10–13.

### 1. Whether the individual defendants violated Campbell's constitutional rights

Because the individual defendants are not entitled to qualified immunity, at this stage, the official capacity claims should not be automatically dismissed. In this case, the record contains very little information regarding what specifically happened during Campbell's initial appearance or bond hearing, what facts or factors the court considered in setting Campbell's bond, what arguments Campbell, if represented by counsel, may have presented, or what impact setting a bond at "25 times what . . . [Campbell] could afford" had on his decision to plead guilty. *See* Docket 1 at 4 (capitalization in original omitted). At this stage of the proceedings, the court lacks sufficient information to apply the "Supreme Court's trial-like and outcome-influencing frameworks for critical-stage analysis[.]" *See generally Farella v. Anglin,*[1] 734 F. Supp. 3d

---

[1] After considering the parties' cross-motions for summary judgment, the Western District of Arkansas granted plaintiffs' motion for summary judgment and held:

> And on the balance of the legal authority and undisputed facts presented, the Court finds that Judge Anglin's bail determination is a critical stage of Plaintiffs' criminal proceedings. This finding is consistent with the Supreme Court's trial-like and outcome-influencing frameworks for critical-stage analysis and with guiding precedent.

863, 874–84 (W.D. Ark. 2024) (applying the undisputed facts and empirical data to consider the applicable frameworks for critical stage analysis). Thus, this deficiency in the record precludes resolution of the issues at this time.

### 2. Whether Pennington County's challenged policy was the moving force behind the alleged violation of Campbell's constitutional rights

SDCL § 23A-40-6 provides in relevant part that:

if it is satisfactorily shown that the defendant or detained person does not have sufficient money, credit, or property to employ counsel and pay for the necessary expenses of his representation, the judge of the circuit court or the magistrate shall, upon request of the defendant, assign, at any time following arrest or commencement of detention without formal charges, counsel for his representation[.]

SDCL § 23A-40-6. Based on this statute, defendants argue that the court, not Pennington County policy, determines when counsel is appointed for an indigent defendant. According to defendants, "[c]ounsel was not appointed for Plaintiff until after his initial appearance, presumably at which Plaintiff made a showing of indigency and requested court-appointed counsel." Docket 16 at 11. At the motion to dismiss stage, Campbell, the plaintiff, not defendants, is entitled to the benefit of all favorable inferences from the allegations in the complaint. Giving Campbell the benefit of all favorable inferences from the complaint, he has plausibly alleged that he was not even permitted to submit an application for court-appointed counsel until after his initial appearance

---

*Farella*, 734 F. Supp. 3d at 884. This decision was issued on August 21, 2024, after Campbell's initial appearance. *Id.* at 863. An appeal of this decision is pending before the Eighth Circuit. *Farella v. District Judge A.J. Anglin*, No. 24-2914 (8th Cir.). The case was argued and submitted to the panel on January 15, 2026.

during which bond was set due to the Pennington County public defender's office's policy of not representing criminal defendants at initial appearances. In his response to defendants' motion to dismiss, Campbell notes that the magistrate judge referenced the Pennington County public defender's office's policy of "not representing criminal defendants at all during their initial appearances[.]" Docket 19 at 12 (capitalization in original omitted).[2] Thus, giving Campbell the benefit of all reasonable inferences, Campbell has also plausibly alleged that even if the magistrate judge had granted his motion for court-appointed counsel before the initial appearance, the Pennington County Public defender's office would not have represented him during his initial hearing when his bond was set because of the allegedly unconstitutional policy Campbell challenges.

### 3. Whether Campbell's guilty plea is an absolute defense to his § 1983 claim

Relying solely on Supreme Court cases addressing when a criminal defendant's guilty plea precludes the defendant from raising independent claims that a constitutional right was violated before the guilty plea as a basis for collateral challenges to the underlying conviction in a habeas proceeding, defendants contend that Campbell's "guilty plea should be an absolute defense to his § 1983 claim[.]" Docket 16 at 12–13 (citing *Tollett v. Henderson*, 411 U.S. 258 (1973); *Blackledge v. Perry*, 417 U.S. 21 (1974); *Class v. United States*, 583

---

[2] Because defendants have requested that the court take judicial notice of Campbell's underlying state court criminal proceeding, *see* Docket 16 at 2, it is appropriate for the court to consider statements Campbell alleges the magistrate judge made during hearings held in those proceedings.

U.S. 173 (2018)). Because Campbell is not requesting that the court vacate or set aside his conviction, Campbell's guilty plea does not preclude him from seeking monetary damages for an alleged violation of his Sixth Amendment constitutional right.

For these reasons, defendants' motion to dismiss Campbell's official capacity claims is denied.

## IV.    Campbell's Miscellaneous Requests

In his response to defendants' motion to dismiss, Campell seeks a "permanent injunction, requiring the public defenders office to represent defendants at their initial appearances, where bond arguments are made and a defendant is made aware of the charges against him." Docket 19 at 13–14 (capitalization in original omitted). Campbell also moves for class certification and requests discovery to further develop the facts. *Id.* at 11–12, 13–15.

### A.    Permanent Injunction

In his initial complaint, Campbell requested only money damages and did not request injunctive relief. *See generally* Docket 1. In his response to defendants' motion to dismiss, Campbell requests a permanent injunction requiring the Pennington County public defender's office to represent indigent criminal defendants at their initial appearances where bond arguments are made. Docket 19 at 13. Neither the Federal Rules of Civil Procedure nor the District of South Dakota's Civil Local Rules of Practice permit a plaintiff to amend his complaint, including his requested relief, by way of a response to a motion to dismiss. Campbell's request for a permanent injunction is not

14

properly before the court. For this reason, Campbell's request for a permanent injunction is denied without prejudice. If Campbell chooses, he may seek leave to amend his complaint to include a request for a permanent injunction, and the court will have the benefit of a fully developed record and can consider whether a permanent injunction should be entered when considering the merits of Campell's official capacity claims.

### B.    Class Certification

Campbell requests class certification. Docket 19 at 14–15. Because Campbell is appearing pro se, his request for class certification is denied. Pro se litigants are not permitted to represent the rights, claims, and interests of other parties in a class action lawsuit. *Wilson v. Precythe*, 2023 WL 4531363, at *2 (E.D. Mo. July 13, 2023) ("[I]t is well established that a self-represented litigant cannot represent the rights, claims, and interests of other parties in a class action lawsuit."). Campbell's request for class certification is denied.

### C.    Discovery

Campbell requests to further develop the facts. Docket 19 at 11–12. In his complaint, Campbell also requested "permission to recieve [sic] discovery in relation to this action, from policies, memos, text messages, emails, lists of injured parties, with contact information, and any other relevant information." Docket 1 at 13 (capitalization in original omitted). Because the court has denied defendants' motion to dismiss, defendants must answer Campbell's remaining claims. After defendants answer, the court will enter a Rule 16 scheduling order, including a deadline for conducting discovery. After the court

enters a scheduling order, Campbell may serve interrogatories, requests for production of documents, and requests for admissions from defendants. Campbell may also seek discovery from non-parties by serving subpoenas. Thus, Campbell's request for discovery is denied as premature.

## V.   Conclusion

For these reasons discussed above, it is ORDERED:

1. That defendants' motion to dismiss, Docket 15, is denied.

2. That defendants will answer Campbell's complaint within **14 days** of the date of this order. *See* Fed. R. Civ. P. 12(a)(4)(A).

3. That Campbell's request for a permanent injunction, Docket 19 at 13, is denied without prejudice. If Campbell chooses, he may seek leave to amend his complaint to include a request for a permanent injunction.

4. That Campbell's request for class certification, Docket 19 at 14–15, is denied.

5. That Campbell's request for discovery, Docket 19 at 11–12, is denied.

Dated March 31, 2026.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

16